IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**Northern Division**

| | |
|---|---|
| **THE FIFTH VEDA, INC.,**<br>**244 W 54th Street, Suite 900**<br>**New York, New York 10019**<br><br>   **PLAINTIFF,**<br><br>v.<br><br>**ACTION FRONT UNLIMITED, INC.**<br>**210 York Street, Suite 300**<br>**York, Pennsylvania 17403,**<br><br>   **DEFENDANT.**<br><br>Serve:<br><br>The Corporation Trust, Inc.<br>2405 York Road, Suite 201<br>Timonium, Maryland 21093 | Civil Action No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

(Declaratory Judgment; Rectification of Trademark Register by Correcting Name of Registrant; Declaratory Judgment and Injunctive Relief Prohibiting Threats or Falsehoods Concerning Plaintiff's Right to use the Mark; Alternatively, Cancellation of the Registrations)

Plaintiff The Fifth Veda, Inc. ("Fifth Veda"), by its attorneys, Charles S. Fax, Barry L. Gogel and the law firm of Rifkin Weiner Livingston LLC, for its complaint against Defendant Action Front Unlimited, Inc. ("AFU"), alleges on knowledge as to its own acts, and otherwise on information and belief, as follows:

## INTRODUCTION

1.      This action arises from a trademark dispute concerning the following stylized logo used by the rock band 'LIVE' (the "Mark"):



2. Plaintiff Fifth Veda is a corporation owned by Edward Kowalczyk, the singer, songwriter, and public face of 'LIVE,' and the individual with whom the public associates the above-depicted Mark.

3. On the official LIVE website, Instagram, and Facebook, as well as on other promotional materials, the Mark is displayed superimposed over an image of Kowalczyk:



4. Since at least 2022, Fifth Veda has been the sole and exclusive user of the Mark in commerce, using it in connection with live musical performances by Kowalczyk as LIVE and sales of LIVE merchandise, such as hoodies and t-shirts, at concerts and on internet websites.

5. During this time period, Fifth Veda procured two trademark registrations from the United States Patent and Trademark Office ("PTO") for the Mark: Registration No. 7647160 for entertainment services in the nature of live musical performances, and Registration No. 7390329

for hoodies and t-shirts. A third registration, in the category for musical sound recordings, was initially refused, and an appeal is currently pending before the Trademark Trial and Appeal Board ("TTAB").

6. However, for reasons explained below, Fifth Veda filed these registrations in the name of AFU as the registrant, despite the fact that Fifth Veda is *solely* the party that (a) hired and directed the trademark attorneys prosecuting the registrations, (b) supplied the information necessary for the registrations, and (c) made productive use of the Mark in commerce upon which the registrations were granted (or will be granted, if Fifth Veda prevails on appeal before TTAB).

7. As constituted by the Defendants, AFU is a defunct Maryland corporation that previously obtained registrations of an identical mark but allowed those registrations to be cancelled by the PTO in 2020 due to its failure to demonstrate continued use.

8. AFU has not used the Mark in commerce for at least the past three years.

9. Indeed, upon information and belief, AFU has not transacted any business of any kind for at least the past three years. On October 1, 2024, the State of Maryland Department of Assessment and Taxation cancelled AFU's corporate charter due to AFU's failure to make required corporate filings.

10. AFU has done nothing for at least the past three years indicating any intent to resume use of the Mark in commerce. It has simply sat idle while Fifth Veda has productively and exclusively used the Mark in commerce.

11. In 2022, 2023, 2024, and 2025, Fifth Veda has booked performances and tours for Kowalczyk as LIVE and has sold LIVE merchandise, as well as expending substantial sums on advertising and promotion to build up valuable goodwill in the Mark.

12. The reason Fifth Veda misguidedly procured these registrations in the name of AFU

is that Fifth Veda had understood that it had been granted an exclusive license from AFU and authority to register the Mark on behalf of AFU.

13. Fifth Veda misguidedly believed it was using the Mark as an exclusive licensee, pursuant to an exclusive license from AFU for all 'LIVE' trademarks in perpetuity and throughout the universe and Metaverse.

14. However, AFU has recently taken the position that it never granted any license to Fifth Veda and never authorized any of the foregoing conduct by Fifth Veda, including procuring the trademark registrations for the Mark which AFU itself had abandoned.

15. AFU has done so to assert a claim against Fifth Veda and Kowalczyk in a state court in Pennsylvania alleging, among other things, that all prior uses of the Mark by Fifth Veda dating back to 2013 were unauthorized and infringing uses of the Mark.

16. Further, AFU recently contacted the trademark attorneys hired by Fifth Veda to prosecute the registrations and falsely asserted that those attorneys are not and have never been authorized to act on AFU's behalf.

17. But after sitting idly by for years and even allowing its corporate existence to be forfeited, AFU has no right to suddenly make these new accusations. By virtue of its inaction, AFU has lost any rights it may have previously had to use or to license the Mark.

18. For at least the past three years, Fifth Veda has been the sole and exclusive user of the Mark in commerce and should have listed itself as the registrant when it procured the registrations of the Mark and would have been listed as the owner had AFU informed Fifth Veda of its intent to recant and violate the license and authorization it had granted.

19. AFU's recent conduct and statements make clear that there is a ripe and justiciable dispute between Fifth Veda and AFU as to whether the registrations should have been made in the

4

name of Fifth Veda as registrant, rather than AFU.

20. Fifth Veda brings the instant action to correct its mistake that is based on AFU's improper conduct. If, as AFU now claims, all of Fifth Veda's prior uses of the mark in commerce were without AFU's license or authorization, then Fifth Veda is the user with priority and superior rights to the Mark.

21. AFU cannot demonstrate that it has used the Mark in commerce for at least three years, nor that it intends to do so or is capable of doing so in the future. It cannot even maintain its own corporate existence, let alone organize bookings for live concert performances or the sale of merchandise.

22. For at least three years AFU has collected no revenue due to use of the Mark.

23. For at least three years AFU has expended no money on advertising or promotion of the Mark.

24. For at least three years AFU has done nothing to control the use of the mark by Fifth Veda, nor has AFU asserted any right to control Fifth Veda's use of the mark.

25. For at least three years AFU has done nothing to prevent or stop Fifth Veda from using the Mark.

26. Accordingly, Fifth Veda seeks a declaratory judgment that its use of the mark is non-infringing, and respectfully requests that this Court exercise its authority pursuant to 15 U.S.C. § 1119 to "otherwise rectify the register with respect to the registrations," procured by Fifth Veda in AFU's name, by certifying an order directing the Commissioner of Trademarks of the PTO to change the name of the registrant in the records of the PTO for United States Trademark Registration Nos. 7647160 and 7390329 from Action Front Unlimited, Inc. to The Fifth Veda, Inc. Further, Fifth Veda seeks injunctive relief prohibiting AFU from making improper threats of legal action or false

or misleading statements to third parties concerning Fifth Veda's rights to use the Mark.

## PARTIES

27. Plaintiff Fifth Veda is a California corporation with its principal place of business at 244 West 54th Street, Suite 900, New York, New York 10019-5515.

28. Defendant AFU is a defunct Maryland corporation that has forfeited its corporate status and has no principal place of business, but formerly claimed to have an office at 210 York Street, Suite 300, York, Pennsylvania 17403.

## JURISDICTION AND VENUE

29. The Court has jurisdiction in this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. §§ 1331, 1338, and the Declaratory Judgment Act, 25 U.S.C. §§ 2201, 2202.

30. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, as Defendant is a defunct Maryland corporation and is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

31. The band known as LIVE was formed in 1984 with four original members, Edward Kowalczyk, Chad Taylor, Chad Gracey, and Patrick Dalheimer.

32. The band initially used a different name, but later began using the name LIVE, which Kowalczyk conceptualized and proposed, in or around 1991. Kowalczyk was the lead singer and vocal sound of the band.

33. In 1989, Kowalczyk, Taylor, Gracey, and Dalheimer formed the Maryland corporation AFU, with each member as an equal 25% shareholder.

34. With Kowalczyk as lead singer, LIVE enjoyed tremendous success beginning in the 1990s, with chart-topping hits, millions of albums sold, and successful tours all over the world,

quickly establishing themselves as one of the most prominent and recognizable acts in the burgeoning alternative rock genre.

35.     Over the years, there have been various disputes among Kowalczyk, Taylor, Gracey, and Dalheimer, leading to reconfigurations of the band.

36.     In 2009, Taylor, Gracey, and Dalheimer attempted to exclude Kowalczyk from live performances of the band and instead tour and perform with another lead singer in Kowalczyk's place.

37.     However, these efforts to tour and perform without Kowalczyk were a failure both musically and commercially, as the public recognized that Kowalczyk was irreplaceable as the face and voice of LIVE and refused to accept another singer in Kowalczyk's place.

38.     During this time period, Taylor, Gracey, and Dalheimer also abused their power as a majority of AFU to engage in oppressive conduct through the corporation, purporting to grant themselves royalty-free naked licenses to use AFU's trademarks, and stealing digital royalties which should have been shared with Kowalczyk as a minority member owning 25% of the shares of AFU.

39.     Kowalczyk embarked on a solo career during this time period, and continued to have success performing and selling music.

40.     Whether out of jealousy or spite, Taylor, Gracey, and Dalheimer caused AFU to sue Kowalczyk in 2012, alleging that Kowalczyk's use of the phrase "Ed Kowalczyk of LIVE" constituted trademark infringement under the Lanham Act, and causing Kowalczyk to bring counterclaims against AFU and third-party claims against Gracey, Taylor, and Dalheimer.

41.     In 2013, the parties settled their disputes by written agreement.

42.     However, Taylor, Gracey, and Dalheimer slowly came to realize that they would

have no real prospects of attracting a substantial audience without Kowalczyk.

43. In 2016, Taylor, Gracey, and Dalheimer begged Kowalczyk to come back and tour and perform with them as LIVE.

44. Kowalczyk agreed to tour with them, but only provided that Taylor, Gracey, and Dalheimer would agree to take corrective actions intended to make up for having mistreated Kowalczyk in the past through AFU, and to split tour revenues in a manner that better reflected Kowalczyk's value.

45. Taylor, Gracey, and Dalheimer agreed to these terms, and for several years thereafter the four original members toured and performed as LIVE together, until the COVID pandemic halted nearly all live musical performances in the United States.

**AFU's Trademark Registrations Are Cancelled**

46. In 1997 and 1999, AFU obtained four trademark registrations from the PTO for the same Mark at issue in this action.

47. AFU maintained these registrations until they were cancelled by the PTO in 2020 due to AFU's failure to demonstrate to PTO the continued use of the Mark in commerce.

48. AFU failed to take any action to address the cancellations.

49. AFU also failed to hold any annual or special meetings or inform its shareholders of the trademark cancellations when they occurred.

50. Following a hiatus due to the COVID pandemic, Gracey, Taylor, and Dalheimer began to have interpersonal hostilities between them that did not involve Kowalczyk but led to some or all of Gracey, Taylor, and Dalheimer refusing to perform with one another.

51. Kowalczyk, however, desired to resume regular touring and performing as LIVE.

52. In or around 2022, Kowalczyk and Fifth Veda negotiated with Taylor, Gracey, and

Dalheimer to license AFU's trademarks exclusively to Fifth Veda in perpetuity and throughout the Universe and Metaverse.

53. Kowalczyk sought an exclusive license for Fifth Veda to enable it to book tours and performances as LIVE, and sell LIVE merchandise, with or without Taylor's, Gracey's, and Dalheimer's involvement, because the latter three were unable to get along or conduct themselves professionally.

54. Taylor, Gracey, and Dalheimer each agreed on behalf of AFU to license AFU's trademark rights exclusively to Fifth Veda.

55. Taylor, Gracey, and Dalheimer each represented and warranted to Fifth Veda that they had the right and power to grant AFU's trademark rights to Fifth Veda.

56. Taylor, Gracey, and Dalheimer each represented and warranted to Fifth Veda that in their capacities as directors and shareholders of AFU, they would at all times consent, approve of, and ratify the grant of AFU's exclusive trademark rights to Fifth Veda.

57. Fifth Veda made substantial payments to Gracey, Taylor, and Dalheimer in reliance on their representations and warranties. Based on its understanding that it had obtained unanimous consent from all members of AFU to exclusively license the LIVE trademarks in perpetuity and throughout the Universe and Metaverse, Fifth Veda (a) contracted with numerous third parties to schedule, book, and promote a series of live performances by Kowalczyk as LIVE with musicians other than Taylor, Gracey, and Dalheimer in 2022, 2023, 2024, and 2025; (b) contracted with third parties to sell merchandise in connection with live performances by Kowalczyk as LIVE with musicians other than Taylor, Gracey, and Dalheimer in 2022, 2023, 2024, and 2025; and (c) engaged trademark attorneys to prosecute trademark registrations for the Mark in AFU's name but based solely on the productive

use of the Mark by Fifth Veda.

58. AFU exercised no control over the nature and quality of Fifth Veda's use of the Mark. In particular, AFU exercised no control over which musicians performed with Kowalczyk as LIVE, which songs were performed by Kowalczyk and those musicians as LIVE, which venues were booked or which tickets were sold to the public for LIVE concerts, which staging, lighting, or sound mixing was used for LIVE concerts, or which merchandise was sold bearing the Mark. All of the foregoing were controlled exclusively by Fifth Veda with no input from AFU.

59. On May 21, 2024, Fifth Veda's trademark attorneys obtained Registration No. 7390329 for hoodies and t-shirts. Based on its understanding that it had obtained unanimous consent from all members of AFU to exclusively license the LIVE trademarks in perpetuity and throughout the Universe and Metaverse, Fifth Veda listed AFU as the registrant.

60. On January 14, 2025, Fifth Veda's trademark attorneys obtained Registration No. 7647160 for entertainment services in the nature of live musical performances. Based on its understanding that it had obtained unanimous consent from all members of AFU to exclusively license the LIVE trademarks in perpetuity and throughout the Universe and Metaverse, Fifth Veda listed AFU as the registrant.

61. However, as set forth below, Fifth Veda recently learned it was misguided by AFU and mistaken, and, in fact, the registrant should have been listed as Fifth Veda, not AFU.

### AFU Disavows Fifth Veda's License as Unauthorized

62. In December 2023, Gracey sued Kowalczyk, Fifth Veda, and AFU in state court in Pennsylvania. Among other things, Gracey alleged he was fraudulently induced to agree to license AFU's rights to Fifth Veda and sought monetary damages equal to 25% of Fifth Veda's net receipts for ticket sales and merchandise sales.

63. In response to Gracey's second amended complaint, on April 18, 2025, AFU asserted a cross claim against Fifth Veda and Kowalczyk for breach of the 2013 settlement agreement. AFU's cross claim was filed as a sworn pleading with a verification under penalties of perjury signed by Chad Taylor "as a director and shareholder of Action Front Unlimited, Inc., and being duly authorized to do so[.]"

64. AFU's cross claim consisted of a single cause of action alleged against Fifth Veda and Kowalczyk. In its cross claim, AFU alleged, "Cross Claim Defendants have not obtained a license or the right [sic] legal right to use the name LIVE, LIVE social media accounts or any other intellectual property owned by AFU from AFU."

65. AFU's cross claim further alleged, "Cross Claim Defendant's [sic] have and continue to use said rights without legal authority to do so."

66. These allegations in a sworn pleading verified by AFU's duly authorized director Chad Taylor directly contradicted the representations and warranties made by Taylor, Gracey, and Dalheimer to Fifth Veda upon which Fifth Veda had reasonably relied since 2022. Fifth Veda paid Taylor, Gracey, and Dalheimer substantial amounts based on its understanding that Fifth Veda was granted rights as exclusive licensee of all LIVE trademarks. AFU's sworn allegations, however, indicate otherwise.

67. These allegations in a sworn pleading verified by AFU's duly authorized director Chad Taylor are direct accusations of infringement of the registered trademarks, Registrations Nos. 7390329 and 7647160, which Fifth Veda engaged its trademark attorneys to obtain and list, misguidedly, in AFU's name. Fifth Veda obtained these registrations based on its understanding and reasonable belief that Fifth Veda was the rightful exclusive licensee, exclusively using the Mark with authority to do so. AFU's sworn allegations, however, indicate otherwise.

68. On May 3, 2025, Chad Taylor emailed the trademark attorneys for Fifth Veda, with the subject line "Immediate Inquiry – Unauthorized Representation of Action Front Unlimited, Inc.," identifying himself as "Chad D. Taylor, President of Action Front Unlimited, Inc. ('AFU'), the exclusive owner of the LIVE trademarks with which you appear to have recently been involved."

69. Taylor informed the trademark attorneys, "To date, no director, officer, or authorized representative of AFU has ever retained your services or approved your participation by corporate resolution, as required under AFU's By-Laws."

70. Taylor further stated, "Your names were identified through AFU's recent review of federal trademark filings submitted without proper corporate authorization."

71. Taylor sent a further email on May 12, 2025 to the trademark attorneys, in which he threatened, "If you do not respond, we will proceed to notify the appropriate oversight bodies and reserve all legal rights."

72. At that time, AFU's corporate charter had been forfeited by the State of Maryland for more than seven months, meaning that AFU was a legal non-entity, unable to transact any business other than winding up its corporate affairs.

73. Taylor's email to Fifth Veda's trademark attorneys, sent on behalf of AFU, stated that AFU did not authorize them to obtain the trademark registrations, Registrations Nos. 7390329 and 7647160, in AFU's name.

74. Taylor's email threatened further legal action if they did not comply with his demands.

75. Fifth Veda has booked numerous upcoming performances of LIVE, including a nationwide summer tour, in which it has and intends to use and display the Mark to the public in

promotion, ticket sales, merchandise sales, and live concerts.

76. Fifth Veda has agreements and arrangements with a multitude of third parties in connection with its upcoming tour, all predicated upon Fifth Veda having the right to use the Mark.

77. On June 20, 2025, Taylor emailed an agent from William Morris Endeavor ("WME"), a booking agency with which Fifth Veda has a business relationship, including with respect to its upcoming tour.

78. Taylor's email to WME indicated he was "writing to you directly, in my capacity as President of Action Front Unlimited, Inc. ('AFU')." At the time of writing, AFU had forfeited its corporate charter and had no legal existence.

79. Taylor's email to WME threatens legal action by AFU, including seeking injunctive relief to stop Fifth Veda from touring and performing, and repeats Taylor's prior sworn statements to the effect that, "no license was ever issued … [and] [n]othing grants Ed or [Fifth Veda] the right to operate as LIVE."

80. Taylor's email to WME also makes wildly false claims that AFU owns or controls copyrights for the "copyrighted catalog" of songs recorded by LIVE. Taylor's statements are intended to mislead WME into believing that AFU is entitled to enjoin Fifth Veda from publicly performing songs of which Kowalczyk is a writer and copyright holder.

81. Contrary to Taylor's false statements, the songs recorded by LIVE were primarily written by Kowalczyk and are compositions whose copyrights are owned, in whole or in part, by Kowalczyk, and not by AFU. Under well-established copyright law, neither AFU nor any other person or entity can stop Kowalczyk from publicly performing compositions for which he owns, or co-owns, the copyrights.

82. Taylor's email to WME is a direct interference with Fifth Veda's contracts,

13

business prospects and rights by falsely communicating to WME that Fifth Veda's use of the Mark is infringing or unauthorized.

83. Upon information and belief, unless enjoined from doing so, AFU will continue interfering with Fifth Veda's contracts, business prospects and rights by falsely communicating to third parties that Fifth Veda's use of the Mark is infringing or unauthorized.

84. Because AFU's recent conduct and statements unequivocally demonstrate that it disputes Fifth Veda's right to use the Mark, Fifth Veda brings the instant action.

## COUNT I
### (Declaratory Judgment of Non-Infringement of Trademark)

85. Plaintiff Fifth Veda repeats and incorporates herein the allegations in Paragraphs 1-84 above.

86. An actual controversy exists under 15 U.S.C. §§ 1114 and 1125 between Plaintiff Fifth Veda and Defendant AFU concerning Fifth Veda's rights to continue to use the Mark in commerce, including for live musical performances and sale of merchandise, which requires a declaration of rights by this Court.

87. Fifth Veda seeks a declaration under 28 U.S.C. §§ 2201 and 2202 that its use of the Mark in commerce, including for live musical performances and sale of merchandise, does not infringe, dilute or violate any of AFU's rights, if any, under the trademark laws of the United States, including 15 U.S.C. §§ 1114 or 1125, or any other right of AFU. AFU does not own any valid trademark rights in the Mark, and even if AFU owned any such rights in the past it has abandoned such rights and Fifth Veda has established priority.

88. Accordingly, Fifth Veda's use of the Mark does not infringe or violate any of AFU's rights.

## COUNT II
**(To Rectify Trademark Register by Correcting Name of Registrant – 15 U.S.C. § 1119)**

89. Plaintiff Fifth Veda repeats and incorporates herein the allegations in Paragraphs 1-84 above.

90. Fifth Veda procured two trademark registrations from the United States Patent and Trademark Office ("PTO") for the Mark: Registration No. 7647160 for entertainment services in the nature of live musical performances, and Registration No. 7390329 for hoodies and t-shirts.

91. Fifth Veda misguidedly filed these registrations in the name of Defendant AFU as the registrant based on Fifth Veda's understanding that it had been granted an exclusive license from AFU and authority to register the Mark on its behalf.

92. Fifth Veda hired and directed the trademark attorneys prosecuting the registrations.

93. Fifth Veda supplied the information necessary for the registrations.

94. Fifth Veda's sole and exclusive use of the Mark in commerce is the basis upon which the registrations were granted.

95. AFU's prior registrations were cancelled by the PTO in 2020 due to its failure to demonstrate continued use.

96. For at least the past three years AFU has not used the Mark in commerce.

97. For at least the past three years AFU has no intent to resume use of the Mark in commerce.

98. Accordingly, Fifth Veda's misguided filing of the registrations in AFU's name should be corrected, pursuant to this Court's authority under 15 U.S.C. § 1119 to "otherwise rectify the register with respect to the registrations," by certifying an order directing the Commissioner of Trademarks of the PTO to change the name of the registrant in the records of the PTO for United States Trademark Registration Nos. 7647160 and 7390329 from Action Front Unlimited, Inc. to The

Fifth Veda, Inc..

## COUNT III
### (Declaratory Judgment and Injunctive Relief Prohibiting Threats or Falsehoods Concerning Plaintiff's Rights to Use the Mark)

99. Plaintiff Fifth Veda repeats and incorporates herein the allegations in Paragraphs 1-84 above.

100. Fifth Veda's use of the Mark in commerce, including for live musical performances and sale of merchandise, does not infringe, dilute or violate any of Defendant AFU's rights under the trademark laws of the United States, including 15 U.S.C. §§ 1114 or 1125, or any other right of AFU.

101. Despite this, AFU has publicly and falsely stated in a sworn pleading that Fifth Veda's use is unlicensed and therefore infringing, and has sent emails to Fifth Veda's trademark attorneys threatening them with legal action and to Fifth Veda's booking agency partner WME threatening legal action to enjoin the upcoming tour.

102. Upon information and belief, AFU intends to continue publicly and falsely stating or communicating to third parties with whom Fifth Veda deals that its use of the Mark is infringing or unauthorized.

103. AFU's statements are false and disparaging, and they are causing irreparable harm for which monetary damages are inadequate.

104. Fifth Veda has no adequate remedy at law for AFU's behavior.

105. Accordingly, Fifth Veda asks the Court to enter an order enjoining and restraining AFU from making improper threats of legal action or false or misleading statements to third parties concerning Fifth Veda's rights to use the Mark.

## COUNT IV
### (Alternatively, Cancellation of the Registrations – 15 U.S.C. § 1119)

106. Plaintiff Fifth Veda repeats and incorporates herein the allegations in Paragraphs 1-84 above.

107. Fifth Veda procured two trademark registrations from the United States Patent and Trademark Office ("PTO") for the Mark: Registration No. 7647160 for entertainment services in the nature of live musical performances, and Registration No. 7390329 for hoodies and t-shirts.

108. Fifth Veda misguidedly filed these registrations in the name of Defendant as the registrant based on Fifth Veda's reasonable understanding that it had been granted an exclusive license from AFU and authority to register the Mark on its behalf.

109. At the time Fifth Veda filed these registrations misguidedly in the name of Defendant, Fifth Veda was the only party who used the Mark in commerce or intended to use the Mark in commerce.

110. Accordingly, the registrations should not have been granted to AFU and should be cancelled, pursuant to this Court's authority under 15 U.S.C. § 1119, by issuing an order directing the Commissioner of Trademarks of the PTO to cancel the federal registrations for United States Trademark Registration Nos. 7647160 and 7390329.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fifth Veda prays for the following relief:

a) A declaration that Plaintiff Fifth Veda's use of the Mark does not infringe or violate any of Defendant AFU's rights;

b) An order, pursuant to 15 U.S.C. § 1119, directing the Commissioner of Trademarks of the PTO to change the name of the registrant in the records of the PTO for United States Trademark Registration Nos. 7647160 and 7390329 from Action Front

17

Unlimited, Inc. to The Fifth Veda, Inc.;

c) An order enjoining and restraining AFU from making improper threats of legal action or false or misleading statements to third parties concerning Fifth Veda's rights to use the Mark;

d) Alternatively, an order, under 15 U.S.C. § 1119, directing the Commissioner of Trademarks of the PTO to cancel the federal registrations for United States Trademark Registration Nos. 7647160 and 7390329.

e) An award of costs and reasonable attorneys' fees incurred in this action; and

f) Such other and further relief as the Court may deem just and proper.

                                                    Respectfully submitted,

                                                    *Charles S. Fax*
                                                    Charles S. Fax, Fed. Bar No. 02490
                                                    Rifkin Weiner Livingston LLC
                                                    7700 Wisconsin Avenue, Suite 320
                                                    Bethesda, Maryland 20814
                                                    Telephone: (301) 951-0150
                                                    Cell Phone: (410) 274-1453
                                                    Email: cfax@rwllaw.com

                                                    *Barry L. Gogel*
                                                    Barry L. Gogel, Fed. Bar No. 25495
                                                    Rifkin Weiner Livingston LLC
                                                    502 Washington Ave., Suite 405
                                                    Baltimore, Maryland 21204
                                                    Telephone: (410) 769-8080
                                                    Cell Phone: 410-554-3628

Stacey Ashby
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500

Motion for Admission *Pro Hac Vice* to be Filed

Milton Otto
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500

Motion for Admission *Pro Hac Vice* Pending

July 1, 2025

## JURY DEMAND

Plaintiff Fifth Veda hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

*Charles S. Fax*
Charles S. Fax
